## GULF, C. & S. F. RY. CO. v. SULLIVAN.
### (No. 7974.)

(Court of Civil Appeals of Texas.  Ft. Worth.
May 30, 1914.)

1. RAILROADS (§ 398*)—INJURIES TO PERSON
ON TRACK—NEGLIGENCE—EVIDENCE.

Evidence *held* not to sustain a recovery for injuries to a pedestrian on a track struck by a train, on the theory of the failure of the trainmen to exercise proper care after the discovery of the pedestrian's peril.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1356, 1358–1363; Dec. Dig. § 398.*]

2. DAMAGES (§ 165*)—PERSONAL INJURIES—
EVIDENCE—ADMISSIBILITY.

In an action for personal injuries negligently inflicted the testimony of witnesses as to the number of operations made necessary by the accident and the details thereof, and that plaintiff suffered from an attack of gangrene following the operation, was admissible as a part of the history of the case, the nature and extent of the injury and the probable suffering of plaintiff.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 460; Dec. Dig. § 165.*]

Appeal from District Court, Denton County; Charles F. Spencer, Judge.

Action by Lloyd Sullivan, by next friend, against the Gulf, Colorado & Santa Fé Railway Company. From a judgment for plaintiff, defendant appeals.  Reversed and remanded.

Lee & Lomax, of Ft. Worth, Robb H. Hopkins, of Denton, and Terry, Cavin & Mills, of Galveston, for appellant.  Owsley & Owsley, of Denton, for appellee.

SPEER, J.  This is a personal injury suit brought by Lloyd Sullivan, through his next friend, against the Gulf, Colorado & Santa Fé Railway Company, to recover damages for injuries sustained by him at Sanger on May 19, 1913, as a result of being run over by a car attached to one of defendant's engines engaged in switching at that place. There was a trial before a jury, resulting in a verdict and judgment for the plaintiff in the sum of $5,000, and the defendant appeals.

Numerous grounds of negligence were alleged in appellee's petition, but the trial court stripped the case of every issue save one, and submitted it alone upon the theory of discovered peril.

[1] Appellant complains that the verdict returned is not supported by the evidence upon this issue, and we think the complaint is well taken. Appellee is a minor, being about 19 years of age and has been mentally and physically afflicted since his early childhood, and this fact was known to the station agent of appellant, as well also as to some of the brakemen operating the switching train at the time of the accident. Other material facts will sufficiently appear from the following excerpts from the testimony of the witnesses:

Lloyd Sullivan himself testified:

"I got hurt on the railroad in May of this year. I went down to the depot that morning with Ed and Tom Carrico to watch them unload a thresher. When I got down to the depot, I went in the colored waiting room. I saw Mr. Hurd, the agent, and he ordered me out three times. When he ordered me out, I went to the pumphouse and got a drink of water, and from the pumphouse I started to go home, which was on the west side of the track, the pumphouse being on the east side. When Mr. Hurd ordered me out, there was a train along there on the track, switching. When I went to the pumphouse and got a drink, the engine was way down south of the depot, and there was a car standing there by the pumphouse, and I started around the north side of it, and the train backed back. Before I started around the north end of the car, I had seen the train down south of the depot [here indicating on a plat made by the witness], and I had not seen the train coming back and had not heard it; they did not ring any bell and did not blow any whistle, and did not notify me in any way that they were coming back; I did not know they were coming back on that track. When I started across the track there, and after I got on the track and just before I was hit, June Teakle hollered at me and told me to go back, and I tried to go back; I turned to go back, and the train caught me. The wheels ran over me and cut my leg off."

J. C. McGuire, one of appellant's brakemen, the only employé who saw and was in a position to see appellee at the time of the accident, testified:

"After we started to the house track after this other car, I noticed a party leaning against the coal bin, near the north end, but I did not know who the party was until he started to move away, and when he started to move away, I gave a stop signal and hollered at him and tried to catch him; he started angling sorter north, towards the track; when he made the first move I saw it was that crippled Sullivan boy—I knew him. I was 'bout a car length from him; I gave the stop signal and hollered at him and tried to catch him, but he just kept going, and when I reached out to get him he fell face forward across the track. If he had stopped when I first hollered, he would not have been hurt. He fell just as I reached out to get him, and I was not able to touch him; he was something like a foot and a half from my hand when I reached him. The car moved over him about half its length. When the boy fell, his right leg was lying across the rail, just across the knee, and I made an effort to get that off; I kicked at it and scraped his pants leg; about the time I kicked at his

leg, the wheel hit it. I made an effort to get the boy out from under the car, but it made me sick, and I had to get away. Maniss and somebody else took him out. The distance between the side of the car and the coal bin was something like six feet—that is, the distance from the rail to the coal bin, but from the side of the car to the coal bin would have been about four feet. At the time the accident occurred the train was moving about three or four miles an hour, and I do not think it could have stopped any quicker than it did. I gave the signal to the fireman, and he repeated it to the engineer. I did not know where Mr. Maniss, the other brakeman, and Mr. Bickham were at that time, but they were north of me. I gave the signal to the fireman because I was on his side of the engine, and there were no trainmen on the other side; the stock pens would have interfered with giving signals from that side."

Joe Warren, witness for appellee, testified:

"The train at that time [just before the accident] was on the other side of the crossing, and it backed up, and as it backed up, I was standing right on the stock pens platform. I saw Lloyd Sullivan as they were backing up and as the train was gradually moving off; he was between the coal bin and the car, and the next time I saw him he was under the car, when the car got to him. He was trying to cross the track, and I hollered at him once, and Mr. Teakle hollered at him twice, I think it was when he was trying to cross the track, but he never hesitated any at all, but kept coming that way. I don't know whether he heard Mr. Teakle or not. When I saw Lloyd Sullivan first, he was between the coal bin and the railroad track, kinder angling northwest across the track. When I saw him coming and the train starting, too, I told him to go back, and Mr. Teakle told him to go back. I said to him: 'The train is going to back up there; you had better look out.' I did not say it to him in a distressing way, because I thought that he could get out of the way. The brakeman was on the same side that Lloyd Sullivan was on, and after the train had very near caught Lloyd, the brakeman ran towards him, he said, 'You are going to get hurt,' or something like that; he told him he was going to get hurt if he didn't look out. Lloyd Sullivan was under the train when the brakeman gave the stop signal. I could see the brakeman standing out close to the coal bin just when Lloyd Sullivan started, but I did not see the brakeman give the stop signal then; I was not watching the brakeman, but was watching Lloyd. The only stop signal I saw the brakeman give was just before the train struck Lloyd. When the brakeman gave the stop signal, the train was about to get Lloyd; he was just fixing to make the next step, and if he had made the next step, it would have put him about the center of the track; he would not have gotten across; the car was right at him, and he could not hardly move—that is, when I saw it—I don't know whether the signal was given before that or not."

These excerpts, though taken from the statement contained in appellant's brief, which, under rule 41 for the Courts of Civil Appeals (142 S. W. xiv), we are authorized to do, since appellee in no manner controverts them, are fairly indicative of the entire record. We think the evidence is entirely insufficient to support the verdict and judgment upon the theory that appellant negligently failed to do all in its power after its employés discovered appellee's perilous situation. There is nothing to indicate that all was not done which could have been done

to save appellee from harm after it was seen he intended to cross the track behind appellant's moving car. It cannot be said that he was in a place of peril while standing near the track leaning against the coal bin. It was only after he started to cross the track that he could possibly have been considered in a place of danger, and after this time the evidence is clear that appellant's employés did all that was possible to avert the accident. See F. W. & D. C. Ry. Co. v. Shetter, 58 S. W. 179.

Appellant also complains that the issue of discovered peril should not have been submitted because such issue was not made by appellee's pleadings. It is by no means clear that this complaint also should not be sustained; but, in view of our conclusion on the facts above stated, it becomes an immaterial consideration. In view of what we have said it is unnecessary to discuss the court's action in giving or refusing other charges affecting the issue of discovered peril, since under the evidence it was error to submit this issue at all.

[2] In view of the fact we are remanding the case, it is proper to state we find no error in the court's ruling in permitting the witnesses G. W. Sullivan and Dr. J. C. Rice to testify concerning the number of operations made necessary by the accident and to the details of it, and the further fact that appellee suffered from an attack of gangrene following the operation. If these things, or any of them, were the result of appellee's negligence, that fact should have been pleaded. The testimony was proper as showing a part of the history of the case, the nature and extent of the injury, and the probable suffering of appellee.

For the insufficiency of the evidence to support the verdict and judgment upon the only issue submitted, the judgment is reversed and the cause remanded for another trial.